UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TYRONE WEST,

    Defendant.

_____/

Case No. 16-cr-20803
Hon. Matthew F. Leitman

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF THE ACTIVITY LOGS OF OFFICERS ERIC CARTER AND MICHAEL CARSON (ECF #28)**

In this criminal prosecution, the Government has charged Defendant Tyrone West ("West") with one count of being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1). (*See* Indictment, ECF #11.) On February 23, 2017, West filed a Motion to Compel Disclosure of Activity Logs of Officers Eric Carter and Michael Carson (the "Motion to Compel"). (*See* ECF # 28.) For the reasons explained below, the Court **DENIES** the motion.

**I**

**A**

On November 11, 2016, City of Detroit police officers Eric Carter ("Officer Carter") and Michael Carson ("Officer Carson") stopped a vehicle in which West was riding as a passenger. The in-car video recording system in the officers' patrol

car was operating at the time of the stop, and the officers' interaction with West and the driver is captured on video. The video reveals, among other things, that Officer Carter approached the driver's side of the vehicle and announced that he smelled marijuana; that Officer Carson approached the passenger side of the vehicle and ordered West out of the vehicle; that upon exiting the vehicle West made a movement with his hand that Officer Carson appears to have interpreted as an effort to grab a weapon; that Officer Carson summoned Officer Carter to assist in dealing with West; and that the officers subdued West.

A search of West revealed a firearm that appears to have been tucked in his waistband. But the officers did not find marijuana or evidence of marijuana use in the vehicle. And a drug test of West conducted two weeks after the stop did not reveal the presence of THC – a compound found in marijuana. Moreover, West insists that there was no odor of marijuana emanating from the vehicle.

West was not permitted to possess a firearm because he had previously been convicted of a felony. A grand jury thereafter indicted West on a single count of being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1). (*See* Indictment, ECF #11.)

## B

West has filed two motions. In the first motion (on which the Court will hold a hearing early next month), West asks the Court to suppress the firearm

seized from him (the "Motion to Suppress"). (*See* ECF #18.) In the Motion to Suppress, West contends that "[a]t the time [he] was ordered to get out of the car …. [t]here was no reasonable articulable suspicion that [he] was committing a crime." (*Id.* at 2-3, Pg. ID 42-43.) West insists that the Court should therefore suppress "all evidence seized from the stop of the vehicle." (*Id.* at 1, Pg. ID 41.)

In the Motion to Compel (now before the Court for decision), West seeks disclosure of activity logs of officers Carter and Carson for the sixty days preceding the date that they stopped West. (*See* ECF #28.) West contends that the activity logs identify the stops made by the officers during their shifts and indicate whether the officers claimed to have detected an odor of marijuana during those stops.

West asserts that the activity logs are relevant and material for impeachment purposes in connection with the Motion to Suppress. West says he has reason to believe that there is a "disturbing pattern" through which Detroit Police Department ("DPD") officers falsely or erroneously claim to smell marijuana in order to justify searches and seizures. (*Id.* at 5, Pg. ID 121.) To West, "[t]his troubling pattern suggests (1) that DPD officers are [falsely] claiming to smell marijuana to justify searches; (2) DPD officers do not know what marijuana smells like; or (3) cars may smell like marijuana but not actually have any traces of the substance." (*Id.*) West wants to review the activity logs for Officers Carter and

Carson to determine whether they reflect this "troubling pattern," and, if they do, West wants to use the logs to undercut Officer Carter's claim (and any claim by Officer Carson) that he smelled marijuana coming from the car in which West was riding.

## II

West argues that he is entitled to an order compelling production of the activity logs under three sources of law: (1) Federal Rule of Criminal Procedure 16(a)(1)(E); (2) the Due Process Clause of the Fifth Amendment, as construed in *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972); and (3) this Court's inherent "broad discretion in regulating discovery." (*Id.* at 6-12, Pg. ID 122-28.) The Court will address each in turn.

### A

Federal Rule of Criminal Procedure 16 provides criminal defendants the right, upon proper request, to inspect documents, data, or tangible items that are within the Government's "possession, custody or control" and that are "material to preparing the defense." Fed.R.Crim.P. 16(a)(1)(E). In order to "obtain discovery" under this rule, "the defendant must make a prima facie showing of materiality." *U.S. v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991). A "conclusory argument[] concerning materiality" is not enough. *Id.*

The Sixth Circuit has "not authoritatively defined materiality under Rule 16." *U.S. v. Clingman*, 521 Fed. App'x 386, 392 (6th Cir. 2013). But that court has stated in an unpublished decision that evidence is material if there is "an indication that pre-trial disclosure would … enable the defendant to 'alter the quantum of proof in his favor.'" *U.S. v. Lykins*, 428 Fed. App'x 621, 624 (6th Cir. 2011) (quoting *U.S. v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)). West has not yet persuaded the Court that there is an "indication" that the requested logs would alter the quantum of proof at the suppression hearing.

First, West has not persuaded the Court that there is a general "troubling pattern" of DPD officers falsely or inaccurately claiming to smell marijuana coming from vehicles or persons. In support of that assertion, West offers only a single activity log reflecting the conduct of two officers (not Carter and Carson) on one day of service. (*See* ECF # 28-1.) That does not establish, nor even suggest, a department-wide pattern.

Second, West has not offered any evidence that Officers Carter and Carson, in particular, ever engaged in a "pattern" of falsely or wrongly claiming to smell marijuana. While West has presented evidence that Officer Carter falsely claimed to smell marijuana *during the traffic stop at issue here*, West has not pointed to any evidence suggesting that this was a regular or recurring practice among Officers Carter and Carson. And the Government notes – in a point West does not contest –

that the officers' activity log for the day in question does not contain any other references to the smell of marijuana or to searches justified on the basis of such a smell. The absence of these references undercuts West's claim that Officers Carter and Carson regularly justify police activity based upon the detection – false or otherwise – of the odor of marijuana.

Simply put, West has not yet identified evidence that could support a finding that the requested activity logs reflect repeated detections of marijuana odor by Officers Carter and Carson such that the impeachment value of the logs would "alter the quantum of proof" at the upcoming suppression hearing. *Lykins*, 428 Fed. App'x at 624. In West's own words, there is a "possibility" that the logs reflect false or numerous marijuana detections by Officers Carter and Carson. (Mot. to Compel, ECF #28 at 5, Pg. ID 121.) But a mere "possibility" is not enough to warrant disclosure under Rule 16.

B

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the Due Process Clause requires the prosecution to disclose material exculpatory evidence to a criminal defendant. And in *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court made clear that the prosecution's disclosure obligations extend to material evidence that a criminal defendant could use for impeachment purposes. West contends that *Brady, Giglio*, and their progeny require the

Government to produce the activity logs for Officers Carter and Carson. The Court disagrees. West has not yet shown that the logs are "material" for *Brady/Giglio* purposes, and thus the Government is not obligated to disclose them.

The Supreme Court has "explained that 'evidence is 'material' within the meaning of *Brady* when there is a *reasonable probability* that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith v. Cain*, 565 U.S. 73, 75 (2012) (quoting *Cone v. Bell*, 556 U.S. 449, 469-70 (2009)) (emphasis added). A "reasonable probability" is plainly more than a mere "possibility," and, as noted above, West acknowledges that he has shown only the "possibility" that the logs contain impeachment material. Because (for the reasons explained above) West has not yet shown that the logs in fact (or even likely) contain information that could be used to impeach Officers Carson and Carter, the Court cannot conclude that the logs are material under *Brady*. Thus, *Brady, Giglio*, and their progeny do not require production of the logs.

West counters that *Brady does* require disclosure of the logs because he has offered "more than mere speculation to believe [that Officers Carter and Carson] manufactured probable cause." (Mot. to Suppress, ECF #28 at 11, Pg. ID 127.) But the question is not whether West has presented reason to doubt the officers' claim of probable cause. Instead, the question is whether *the requested logs* would

undermine the officers' claim. The Court is not yet persuaded that there is a reasonable probability that they would.[1]

### C

West finally argues that this Court's "broad discretion to regulate discovery" empowers the Court to compel disclosure of the logs. (*See id.*) As support for that proposition, West directs the Court to *U.S. v. Richards*, 659 F.3d 527, 543 (6th Cir. 2011), in which the court said that "Rule 16 is intended to prescribe the minimum amount of discovery to which the parties are entitled, and leaves intact a court's discretion to grant or deny the broader discovery requests of a criminal defendant."

The Government counters with the following quotation from the Sixth Circuit's decision in *United States v. Presser*, 844 F.2d 1275, 1285 n. 12 (6th Cir. 1988): "the *Brady* rule, Rule 16, and the Jencks Act, exhaust the universe of discovery to which the defendant is entitled." But the Government's quotation is incomplete. The full quote from *Presser* reads as follows: "Although *a trial court may have some inherent power to enter specific orders compelling the disclosure of specific evidence when justice requires it*, the court may not disregard the Jencks Act mandate. However, *in most criminal prosecutions*, the *Brady* rule, Rule 16

---

[1] West argues at some length that the Government's *Brady* obligations extend to evidence that could impeach witnesses or otherwise assist the defense at a suppression hearing. The Court assumes without deciding that West is correct on that point, but, for the reasons explained above, the Court concludes that *Brady* does not require disclosure of the logs.

8

and the Jencks Act, exhaust the universe of discovery to which the defendant is entitled." *Id.* (emphasis added; internal citations omitted).  The Government has not persuaded the Court that it (the Court) lacks the discretion to compel disclosure of the logs.

Here, however, the Court declines to exercise any discretion it may have to require production of the logs at this time.  Simply put, for all of the reasons explained above, the Court is not yet convinced that there is a likelihood that the logs will assist West at the suppression hearing.

### III

For all of the reasons stated above, **IT IS HEREBY ORDERED** that the Motion to Suppress (ECF #28) is **DENIED**.

s/Matthew F. Leitman  
MATTHEW F. LEITMAN  
UNITED STATES DISTRICT JUDGE

Dated:  March 23, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 23, 2017, by electronic means and/or ordinary mail.

s/Holly A. Monda  
Case Manager  
(313) 234-5113